**DECLARATION OF JEREMY STINSON**

I, Jeremy Stinson, do hereby declare:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Task Force Officer (hereinafter "TFO") with Federal Bureau of Investigation (hereinafter "FBI") and have been since June of 2016.  I am also a Deputy with the Clackamas County Sheriff's Office (CCSO), and I have been employed as a full-time law enforcement officer in the State of Oregon for over twenty-three years.  I am currently assigned to the Clackamas County Inter-Agency Task Force (CCITF) which primarily investigates narcotics related offenses.  I have attended Oregon's Department of Public Safety Standards and Training Basic Police Academy, I have also received additional training from the Drug Enforcement Administration (DEA), California Narcotics Officers Association, Oregon Narcotics Enforcement Association, FBI and others on drug trafficking, narcotics, money laundering and other topics.  I have successfully completed DEA's Basic Narcotics Investigations Course and was previously assigned as a TFO to DEA's Portland District Office from 2013 to 2015 investigating trans-national criminal organizations engaging in drug trafficking and money laundering. I have more than 1,600 hours of official law enforcement related training recorded with the Oregon Department of Public Safety Standards and Training and more than 700 hours of documented training with the FBI.  During my employment with CCSO and my assignments at CCITF, FBI and DEA, I have investigated or assisted with the investigation of cases including the possession, distribution, and manufacture of controlled substances.  While working these types of cases, I have consulted and conversed with numerous law enforcement officers from various local, state, and federal agencies on drug cases of many types, including the distribution of methamphetamine, heroin, fentanyl, marijuana, and cocaine.  As a result of this and my own experience and training,

**Declaration of Jeremy Stinson**                                    EXHIBIT A   PAGE 1
                                                                                  Complaint *In Rem*
                                                                                  FOR FORFEITURE

I am familiar with these controlled substances and the methods employed by traffickers of these narcotics.

## PURPOSE OF THIS DECLARATION

2.      This declaration is submitted in support of a Complaint *in rem* for forfeiture of $63,365.00 in U.S. Currency (hereinafter **"Defendant Paper Currency"**) and Cryptocurrency in the amount of approximately 2.5251 Bitcoin (BTC), approximately 11.7516 Ethereum (ETH), and approximately 7.2532 Litecoin (LTC) (hereinafter **"Defendant Cryptocurrency"**).  Collectively both sets of assets will be referred to in this affidavit as "**Defendant Currency**".

3.      On May 27, 2021, investigators with the Clackamas County Sheriff's Office seized **Defendant Currency** from Ian SCHMITT (SCHMITT).  The **Defendant Paper Currency** was seized from multiple locations including SCHMITT's residence on 132nd Avenue in Happy Valley, Oregon (hereinafter "Location-1"); SCHMITT's alternate marijuana processing location on SW Hall Blvd., Tigard, Oregon (hereinafter "Location-2") and from SCHMITT's backpack, when he was arrested at the Holiday Inn Express in Gladstone, Oregon, which all occurred on May 27, 2021 following the execution of multiple Oregon state search and arrest warrants related to a CCITF investigation into SCHMITT. The **Defendant Cryptocurrency** was seized later that same day, pursuant to an Oregon state search warrant, from Coinbase accounts belonging to Kai PACKER and Ian SCHMITT.  **Defendant Cryptocurrency** was also seized from a hardware wallet seized from Ian SCHMITT seized during the search warrant execution at SCHMITT's residence at Location-1.

4.      In this declaration, I will demonstrate that there is probable cause that the **Defendant Currency** described above represents proceeds from the illegal production,

**Declaration of Jeremy Stinson**                                    EXHIBIT A   PAGE 2
                                                                                            Complaint *In Rem*
                                                                                            FOR FORFEITURE

conversion, and/or distribution of marijuana, in violation of 21 U.S.C. § 841, and is subject to forfeiture pursuant to the provisions of 21 U.S.C. § 881(a)(6).

5.    The facts in this declaration come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This declaration is for the limited purpose of establishing probable cause for the declaration. Therefore, I have not set forth each fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause.

## SUMMARY OF INVESTIGATION

6.    In March 2021, investigators with CCITF received information from Homeland Security Investigations (HSI) about ongoing narcotics trafficking at Location-1.  HSI investigators provided that the target of their investigation, Jesse Schmitt, resided at Location-1 and was trafficking a "large amount" of methamphetamine from the residence.  A check of Law Enforcement Data Systems (LEDS) records revealed Jesse Schmitt had been arrested multiple times in Oregon, including a 2006 Felony arrest and conviction for Delivery and Manufacture of a Controlled Substance in Multnomah County, Oregon.  Jesse Schmitt was convicted again in December 2013 for Delivery of Methamphetamine.  At the time CCITF received this information from HSI, Jesse Schmitt was on post-prison supervision for his 2013 methamphetamine conviction.

7.    On March 5, 2021, CCITF investigators were conducting surveillance of Location-1 and observed Ian SCHMITT, Jesse Schmitt's son, load multiple large brown boxes and USPS flat rate shipping boxes into a black GMC Envoy.  Investigators followed Ian SCHMITT who drove to an apartment in Gladstone, dropped off his passenger, drove to the U.S. Post Office in Milwaukie, Oregon, and then drove to the U.S. Post Office located in Gladstone,

**Declaration of Jeremy Stinson**                    EXHIBIT A   PAGE 3
                                                    Complaint *In Rem*
                                                    FOR FORFEITURE

Oregon.  During surveillance, investigators observed SCHMITT carry multiple assembled shipping boxes into each of the above-described post offices.

8.    Investigators then coordinated with U.S. Postal Inspectors for the seizure of the boxes SCHMITT attempted to ship, thirteen boxes in total and all addressed to locations outside of Oregon.  After investigators obtained federal search warrants to search the contents of the thirteen seized packages, investigators found approximately 20.25 pounds of suspected marijuana, 0.74 pounds of suspected psilocybin mushrooms, and 2.96 pounds of suspected marijuana extract. The Oregon State Police Crime Lab conducted analytical tests confirming that one of the packages contained marijuana and another contained psilocybin mushrooms, a Schedule I controlled substance.  Investigators noted that the contents of the other seized packages were similar in appearance to the confirmed controlled substance tested by the crime lab.  I later conducted MOBILE Detect field test on the contents of two more of the untested packages which resulted in positive test results for marijuana and marijuana extract.

9.    Investigators continued to conduct surveillance of Ian SCHMITT, his residence, and his suspected criminal associates, Hannah WEST and Kai PACKER.  Investigators continued to observe SCHMITT and others bring in flat, unconstructed USPS flat rates boxes into the residence and leave with constructed boxes investigators believed contained controlled substances or U.S. currency.

10.    On April 29, 2021, investigators set up surveillance on Location-1.  At this location was Ian SCHMITT, WEST, and PACKER.  While on surveillance, investigators observed PACKER arrive in a Mercedes at Location-1, walk into Location-1 with a white paper bag, and then go in and out of the Mercedes with Ian SCHMITT, before walking back inside Location-1. Approximately thirty minutes after Ian SCHMITT had left Location-1, PACKER

**Declaration of Jeremy Stinson**                    EXHIBIT A   PAGE 4
                                                      Complaint *In Rem*
                                                      FOR FORFEITURE

walked out of Location-1 with a USPS priority flat package in hand and placed it in the trunk of the Mercedes. Once PACKER left, investigators stopped his vehicle, detained PACKER, and during a probable cause search of his vehicle, under the mobile vehicle exception, investigators seized a small amount of cocaine, approximately $20,480 in U.S. Currency, which was all over the front passenger seat and protruding from a white paper bag, and two USPS priority flat rate packages from the trunk addressed to locations outside of Oregon.

11.     Investigators also seized PACKER's cell phone during the probable cause search of his vehicle.  While seizing the above items, investigators conducted a post-*Miranda* interview of PACKER. During this interview PACKER stated the USPS priority flat rate packages contained marijuana and marijuana oil (marijuana extract). He also stated the $20,480 was cash he was using to buy his mother a vehicle.  He stated he was taking that money to his residence in Portland, and he had approximately $19,000 in bitcoin on a hardware wallet, which he stores at his residence.

12.     Based on my training and experience and this investigation to date, I know that a large profit can be made by sending marijuana and marijuana extract to locations in the United States where marijuana laws are strict. In this case PACKER and his co-conspirators, Ian SCHMITT and WEST, are believed to be sending packages to those states.  I also know that $20,480 is a lot of money for only sending one or two packages of marijuana and marijuana extract at a time, leading me to believe that these were proceeds of numerous packages.

13.     Investigators later obtained a federal search warrant to open the packages seized from PACKER and upon execution of those warrants, investigators located and seized 75.4 grams of suspected marijuana extract and one pound of suspected marijuana.

**Declaration of Jeremy Stinson**                          EXHIBIT A   PAGE 5
                                                           Complaint *In Rem*
                                                           FOR FORFEITURE

14. Investigators obtained a search warrant issued by Clackamas County District Judge Lininger that authorized the search of both PACKER's cell phones seized at the time of the stop. During the search of PACKER's cell phones, investigators learned PACKER, Ian SCHMITT, and WEST, are being provided bulk quantities of drugs by a male identified as Cesar RIVERA. This information was learned while reading text message conversations between Ian SCHMITT, PACKER and RIVERA. Investigators also learned from the text messages that PACKER, WEST, and Ian SCHMITT were receiving payments from sending out the marijuana, marijuana extract, and psilocybin mushrooms in bulk cash and via Apple Pay, Cash App and other peer-to-peer (P2P) cash transfers, as well as cryptocurrency in the form of Bitcoin.

15. Based on the above, investigators initiated a financial investigation on Ian SCHMITT and determined that between July and December of 2020, approximately 488 transactions were successfully processed through SCHMITT and WEST's Cash App accounts, totaling just under $300,000. Records show that WEST appeared to be sending funds between Cash App accounts that she and SCHMITT controlled, which is consistent with money laundering. The funds then appeared to be used to purchase, sell, and withdraw Bitcoin.

16. Between August 2020 and January 2021, records show SCHMITT's JP Morgan Chase and Wells Fargo bank accounts received over $195,000 from incoming Cash App and ACH transfers from Coinbase, Venmo, and other parties. Once the funds were transferred to his bank accounts, SCHMITT would then quickly pull out a majority of the proceeds in bulk cash. When pulling out the bulk cash, SCHMITT used multiple ATMs and tellers at different banks and withdrew amounts less than the $10,000 currency transaction reporting (CTR) requirement. Based on my training and experience, this type of activity is indicative of intentionally structuring the withdrawals to avoid the filing of a CTR as there is generally no personal or business reason for

**Declaration of Jeremy Stinson**          EXHIBIT A   PAGE 6
                                                Complaint *In Rem*
                                                FOR FORFEITURE

going to multiple banks to transact in amounts just under the $10,000 threshold.  Also based on my training and experience, I know the constant movement of money between P2P applications, cryptocurrency exchanges, and multiple bank accounts which all eventually is withdrawn in amounts just under $10,000 and kept in bulk cash is a tactic used to launder proceeds derived from criminal activity in an effort to conceal the nature, location, and/or source of the illegal proceeds.

17.    During the course of this investigation, the U.S. Postal Inspectors Office (USPIS) has reviewed business records and determined SCHMITT is likely receiving bulk cash though the U.S. mail sent to a P.O. Box, and PACKER is likely receiving bulk cash through the mail at his residence.  USPIS made this determination based on an analysis of the weight of the packages being shipped from other states to Oregon as consistent with weight seen in bulk cash packages, particularly when combined with the knowledge that SCHMITT and PACKER ship marijuana from Oregon to other states.  This investigation has yielded information through financial analysis, visual surveillance, and a search of PACKER's cell phones that investigators believe SCHMITT, PACKER, and WEST are laundering hundreds of thousands of dollars in illegal proceeds from the sale of marijuana, marijuana extract, and psilocybin mushrooms by converting P2P cash transfers received for the sale of narcotics, converting them into cryptocurrency or cash, sometimes moving them through bank accounts to pull out the cash.  Investigators also believe SCHMITT, PACKER, and WEST were making frequent cash withdrawals structured to avoid CTR reporting requirements.

18.    On May 27, 2021, investigators with CCSO and the CCITF, with assistance from Westside Inter-Agency Narcotics team and Portland FBI executed state search warrants at multiple locations in and around the Portland, Oregon metropolitan area that included Location-1,

**Declaration of Jeremy Stinson**                    EXHIBIT A   PAGE 7
                                                     Complaint *In Rem*
                                                     FOR FORFEITURE

Location-2 and Location-3. During the search warrant executions, investigators found evidence indicating SCHMITT, WEST and PACKER had been packaging controlled substances for shipment through the U.S. Postal Service. Investigators were also able to identify and search SCHMITT's marijuana source of supply, Cesar RIVERA. Investigators located and seized some of the following items:

Location-1: SE 132nd Avenue, Happy Valley:

- $82 in U.S. currency, located in the top drawer of a toolbox in Ian SCHMITT's and Hanah WEST's bedroom;
- $44,968 in U.S. Currency, located in Ian SCHMITT's and Hannah WEST's bedroom, within a backpack inside a black storage container inside a closet;
- Black, electric money counter, found in the garage in a green tote;
- 220 grams of marijuana concentrate (Butter) in a glass jar in the garage; and
- 27 grams of psilocybin mushrooms found in a black HDX tote in the garage.
- Cryptocurrency hardware wallet containing approximately 7.09 ETH and 1.98 BTC

Location-2: SE Hall Blvd., Tigard:

- $155 in U.S. currency,
- $1,019 in U.S. currency,
- 9.75 pounds of marijuana

Location-3: SE Scottstree Way, Clackamas:

- 30.67 pounds of marijuana
- 11.1 pounds of psilocybin mushrooms
- 2.05 pounds of methamphetamine

Location-4: SW Beaverton Hillsdale Hwy., Portland:

- 89.75 pounds of marijuana
- 10.4 pounds of psilocybin mushrooms
- $2,160 in U.S. currency

Location-5: Holiday Inn, Gladstone:

- $17,007 in U.S. currency from Ian SCHMITT's person

**Declaration of Jeremy Stinson**

EXHIBIT A   PAGE 8
Complaint *In Rem*
FOR FORFEITURE

Location-6: NE 19th Avenue, Portland:

- 6.5 pounds of marijuana
- 1.75 pounds of fentanyl pills

19.    During the search warrant executions and subsequent arrests of SCHMITT and WEST at a local motel, investigators seized $17,007 in **Paper Currency** from SCHMITT's backpack and a piece of notebook paper with several words written on it, which was later identified as seed phrases for a cryptocurrency wallet. I know from speaking with CCSO Deputy Wass, reviewing blockchain analysis, and reviewing police reports that investigators used the seed words seized to reconstitute one of the hardware wallets seized from Ian SCHMITT, constituting some of the **Defendant Cryptocurrency**.

20.    The remainder of the **Defendant Cryptocurrency** was seized later that same day on May 27, pursuant to a state search warrant served to Coinbase for cryptocurrency accounts associated with SCHMITT.

21.    A subsequent review of information provided by Coinbase revealed the following information regarding the seized Cryptocurrency:

- FBI Item # 1B3 - 0.48453792 Bitcoin (BTC) seized from a Coinbase wallet attributed to Kai PACKER and transferred to FBI Evidence wallets.

- FBI Item # 1B6 - 0.39214005 Ethereum (ETH) seized from a Coinbase wallet attributed to Kai PACKER and transferred to FBI Evidence wallets.

- FBI Item # 1B7 – 0.01155369 Bitcoin (BTC), 0.04736174 BTC, 7.2532471 Litecoin (LTC), and 4.26277727 Ethereum (ETH) from Coinbase wallets attributed to Ian SCHMITT and transferred to FBI Evidence wallets.

**Declaration of Jeremy Stinson**

- FBI Item # 1B8 – 7.09668972 Ethereum (ETH) and 1.98174411 Bitcoin (BTC) from a hardware wallet seized from Ian SCHMITT transferred to an HSI Seizure wallet then to FBI Evidence wallets.

22.    Based on the records available, I believe this cryptocurrency was obtained by SCHMITT and PACKER during the time period of the criminal activity, and I am not aware of any other source of income for SCHMITT or PACKER during that time.

23.    On April 16, 2026, FBI SA Alexis Poeta and I conducted a hand re-count of **Defendant Paper Currency** seized during this investigation and logged into FBI Evidence as item #1B1.  A total of $63,365 was verified through a double count of the seized currency.

24.    In addition, investigators recovered digital devices (cellular phones) from Ian SCHMITT and Hannah WEST which were later searched upon obtaining a state search warrant. A review of an iPhone SE seized from the person of Ian SCHMITT during his arrest in Gladstone, Oregon May 27, 2021, revealed evidence that SCHMITT was buying multi-pound quantities of bulk marijuana from suppliers, repackaging the marijuana, and selling it on an online storefront "OregonFam".  I noted that the phone contained attribution indicating it was used by SCHMITT, including photos of SCHMITT and his Oregon State Driver's License:



25.    In the same iPhone I also noted photos of bulk marijuana and messages about purchasing bulk marijuana:





26.    I also noted information about the online storefront on Snapchat used by SCHMITT and Kai PACKER to sell marijuana, marijuana extract, vape cartridges containing marijuana oil (referred to as "carts") and psilocybin mushrooms:



27.    I also located pictures of marijuana and psilocybin mushrooms likely used to advertise products for sale on the platform or possibly by suppliers:

**Declaration of Jeremy Stinson**                    EXHIBIT A   PAGE 12
                                                     Complaint *In Rem*
                                                     FOR FORFEITURE



28.      I discovered evidence that SCHMITT was using the United States Postal Service (USPS) to send orders to customers.  I noted several of the USPS receipts with tracking numbers indicated locations packages were being shipped to that had Marijuana laws that were far stricter than those in Oregon:



**Declaration of Jeremy Stinson**                     EXHIBIT A   PAGE 13
                                                      Complaint *In Rem*
                                                      FOR FORFEITURE

29.    I also noted evidence of cryptocurrency transactions for both Bitcoin (BTC) and Ethereum (ETH), including a screenshot of a notification of an email received showing a transfer of Bitcoin received:



30.    The search of the phone revealed information indicating the use of peer-to-peer payment systems such as Cashapp or Venmo, including a screenshot from Squareup (who operates CashApp) indicating an account had been closed for violating the terms of service:



**Declaration of Jeremy Stinson**

EXHIBIT A   PAGE 14
Complaint *In Rem*
FOR FORFEITURE

## CONCLUSION

31.    Based on the drug trafficking investigation completed by CCITF showing SCHMITT and PACKER shipping marijuana and other controlled substances across the United States and a review of seized digital devices showing evidence of SCHMITT and PACKER receiving payment for those shipments in the form of cryptocurrency and cash through the U.S. mail, I believe the **Defendant Currency** to be profits from the illegal sale of marijuana.

32.    The evidence in this declaration provides probable cause to believe, and I do believe that the **Defendant Currency** seized from Ian SCHMITT and Kai PACKER constitutes property furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, in violation of 21 U.S.C. § 841 and therefore subject to forfeiture pursuant to the provisions of 21 U.S.C. § 881(a)(6).

I declare under penalty of perjury that the forgoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 1st day of May 2026.


*/s/ Jeremy Stinson*
JEREMY STINSON
Task Force Officer
Federal Bureau of Investigation


**Declaration of Jeremy Stinson**                                    EXHIBIT A   PAGE 15
Complaint *In Rem*
FOR FORFEITURE